# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HILLARY BURKS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    Case No. 10-CV-724-JHP-PJC |
| | ) |
| MIKE MULLIN, Warden, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) and brief in support (Dkt. # 2) filed by Petitioner Hillary Burks, a state inmate represented by counsel. Respondent filed a response (Dkt. # 6) and provided the state court records (Dkt. # 8) necessary for the adjudication of Petitioner's claims. Petitioner filed a reply (Dkt. # 9). For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### BACKGROUND

During Petitioner's non-jury trial, held in Tulsa County District Court, Case No. CF-2008-644, Tulsa Police Officers Wesley Phelps, Jeffrey Edwards, and William Jenkins testified concerning the events of November 15, 2007. See Dkt. # 8-5, Tr. Non-Jury Trial. On that date, Officer Phelps made contact with a female informant who told him that she "could order up some crack cocaine." Id. at 8. At the time of his testimony, Officer Phelps could not remember who made the initial approach. Id. at 25. Officer Phelps testified that he assumed she was in trouble and that she made the offer to provide the information "if [they'd] go light on her for whatever law she violated." Id.

Officer Phelps contacted Officer Edwards, shared the information, and they coordinated an investigation at The Rest Inn and Suites in Tulsa, Oklahoma. Id. at 9, 28-29. The female informant placed a phone call to a man and ordered $40 worth of crack cocaine to be delivered to the motel. Id. at 29. Approximately fifteen minutes later, "the phone inside the [motel] room rang and a male told the informant that he was outside." Id. at 30. Officer Edwards, acting undercover, walked out of the hotel room with the informant and approached a blue, older, four-door sedan in the parking lot. Id. The officers planned for the drug transaction to occur in the motel room where they had more control over the situation, so Officer Phelps remained in the motel room, hiding in the bathtub as back-up for Officer Edwards. Id. at 11, 23.

As Officer Edwards and the informant approached the vehicle, Officer Edwards observed that it was occupied by three black males, and later identified the driver as Petitioner, Hillary Burks. Id. at 30. After a brief exchange with the two passengers, Officer Edwards told them that he was not going to conduct the transaction in the parking lot and "backed away from the car and then walked back to the motel room." Id. at 32. "[S]hortly after" Officer Edwards walked away, the informant followed him back inside the motel room. Id. Within a couple of minutes, the two passengers in the vehicle driven by Petitioner exited the car, came to the hotel room, conducted the drug transaction, had a brief, friendly exchange with Officer Edwards, and then left. Id. at 32-33, 41-42. Officer Phelps informed a team of Tulsa Police Officers led by Officer Jenkins that "the buy had been completed and they were in possession of what they believed to be crack cocaine." Id. at 46. Officer Jenkins followed the vehicle Petitioner was driving to a Taco Bell restaurant where all three men were arrested. Id.

2

Petitioner and the other two occupants of the vehicle, Tommy Doyle and Darryl Taylor, were all charged with Distribution of a Controlled Substance in Tulsa County District Court, Case No. CF-2008-644.[1]  (Dkt. # 8-6, O.R. at 3).  At the conclusion of a non-jury trial, Petitioner was convicted of Distribution of a Controlled Substance (Cocaine Base) in violation of OKLA. STAT. tit. 63, § 2-401, After Former Conviction of Two or More Felonies.  He was sentenced to a term of eighteen (18) years imprisonment and fined $500.  Id. at 16.  Petitioner was represented at trial by attorney James Fransein.

Petitioner timely perfected an appeal to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Art Fleak, Petitioner raised six propositions of error, as follows:

| | |
|---|---|
| Proposition I: | The Defendant was denied his right to be confronted by all the witnesses against him. |
| Proposition II: | The District Court erred in failing to hold a hearing on the issue of denial of confrontation of a witness. |
| Proposition III: | The Defendant was denied the right to present a defense by the State's withholding the name of a key fact witness. |
| Proposition IV: | The Defendant was denied his right to a jury trial; and the District Court erred in failing to hold a hearing after the Defendant wrote that he had been pressured into waiving his right to a jury trial. |
| Proposition V: | The evidence against the Defendant was insufficient for conviction. |
| Proposition VI: | The District Court should have recused itself due to the appearance of impropriety. |

(Dkt. # 6-1).  On July 13, 2010, the OCCA denied relief and affirmed the Judgment and Sentence of the district court.  (Dkt. # 6-3).  The record before the Court shows that Petitioner did not file a

---

[1]At the conclusion of a joint jury trial, Doyle was found guilty and Taylor was found not guilty of Distribution of a Controlled Substance.  (Dkt. # 8-6, O.R. at 11).  Doyle was sentenced to ten (10) years imprisonment.  Id.

petition for writ of certiorari at the United States Supreme Court, nor did he file an application for post-conviction relief in the state district court.  (Dkt. ## 1; 8-6, O.R. at 1-19).

Petitioner filed his petition for a writ of habeas corpus and brief in support on November 15, 2010.  (Dkt. ## 1, 2).  Represented by attorney Art Fleak, Petitioner raises two grounds of error, as follows:

Ground I:    The Petitioner was deprived of his 6th Amendment right to be confronted by the witnesses against him when the trial court admitted, over objection, a statement to police officers identifying him and his car, by an unavailable declarant.

A.  The Oklahoma Court of Criminal Appeals clearly violated the principles of Crawford v. Washington in approving the district court which did not determine whether or not the female witnesses' statements qualified as Excited Utterances, or any other hearsay exception; instead it simply let the evidence in without analysis.

B.  The Court of Criminal Appeals decision violates the Supreme Court case of Crawford, as the female witness' statements were "testimonial."

Ground II:   The District Court did not even hold a hearing to make a Crawford analysis.

(Dkt. # 2).  Respondent argues that the decision by the OCCA was not contrary to or an unreasonable application of Supreme Court precedent.  (Dkt. # 6 at 4).

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b).  See Rose v. Lundy, 455 U.S. 509, 510 (1982).  Petitioner presented his claims to the OCCA on direct appeal.  Therefore, he has exhausted state court remedies.

4

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.    Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

The OCCA adjudicated all of Petitioner's claims on direct appeal.  Therefore, to the extent his claims are cognizable in this federal habeas corpus proceeding, they shall be reviewed pursuant to 28 U.S.C. § 2254(d).

**1.    Confrontation clause (Ground I)**

5

In his first ground for relief, Petitioner argues that he was denied his right to confront a witness "against him when the trial court admitted, over objection, a statement to police officers identifying him and his car, by an unavailable declarant." (Dkt. # 2 at 22). The unavailable declarant was identified by police as a female informant and the trial court recognized that she was also a witness. See Dkt. # 8-3, Tr. Motion Hr'g at 7. Petitioner argues that the statements made to the police by the female informant are testimonial hearsay and any error in admitting the statements was not harmless. (Dkt. # 2 at 23). The testimonial hearsay Petitioner complains of occurred during the testimony of Tulsa Police Officers. According to Petitioner, the police officers testified that "the female witness told them that a man she knew as 'Nephew' would bring her cocaine, and that he would arrive in a blue car." Id. at 23, 34-35. Neither party called the female informant as a witness, id. at 24, and neither party knew the identity of the witness or how to locate her. (Dkt. # 8-5, Tr. Non-Jury Trial at 4-6).

In addressing the merits of this claim, the OCCA relied on Crawford v. Washington, 541 U.S. 36 (2004), and the fact that the "Crawford confrontation clause requirements only apply to hearsay statements." (Dkt. # 6-3 at 2). The OCCA then concluded that the statements made by the female informant were "not hearsay because they were not offered for their truth, but to explain the officers' actions." Id. The OCCA found that Petitioner's right to confrontation was not denied. Id.

The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford, 541 U.S. at 38. When a petitioner raises a claim that his right to confront witnesses against him was violated, the Court must "employ a multi-part inquiry to determine if the right to confrontation has been violated. [The Court] examine[s] (1) whether the challenged evidence is hearsay; (2) whether

it is testimonial; and (3) if the evidence is testimonial hearsay, whether its introduction was harmless error." United States v. Mendez, 514 F.3d 1035, 1043 (10th Cir. 2008) (citing United States v. Summers, 414 F.3d 1287, 1299-1303 (10th Cir. 2005)).  A statement is hearsay if an out of court statement or assertion made by declarant is offered, at trial, for the truth of the matter asserted.  See FED. R. EVID. 801.  The Supreme Court has held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford, 541 U.S. at 59.  Thus, the focus of the protection afforded by the Confrontation Clause is formal, testimonial statements.

"'Testimony' . . . is typically a solemn declaration of affirmation made for the purpose of establishing or proving some fact.  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 51.  After Crawford, the Supreme Court further defined that,

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 547 U.S. 813, 822 (2006).  The Tenth Circuit, formulated its own definition of a testimonial statement, after recognizing that the Supreme Court "declined to attempt 'to produce an exhaustive classification of all conceivable statements – or even all conceivable statements in response to police interrogation – as either testimonial or nontestimonial.'" United States v. Smalls, 605 F.3d 765, 776 (10th Cir. 2010) (quoting Davis, 547 U.S. at 822).  It stated,

> Synthesizing Crawford and Davis, we might today formulate a definition of a testimonial statement which reads: a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration

7

was made was that of establishing or proving some fact potentially relevant to a criminal prosecution. Or, to better conform to the current state of Tenth Circuit precedent, we might say: A formal statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime. See Summers, 414 F.3d at 1302.  As we recognized in Summers, "'[t]he proper inquiry . . . is whether the declarant intends to bear testimony against the accused. Id. at 1302 n.9 (quoting United States v. Cromer, 389 F.3d 662, 675 (6th Cir.2004)). And the standard by which a court measures the declarant's intent is an objective one. See Davis, 547 U.S. at 822, 126 S.Ct. 2266; Summers, 414 F.3d at 1302."

Smalls, 605 F.3d at 778.

"Confrontation Clause errors are subject to . . . harmless-error analysis." Littlejohn v. Trammell, 704 F.3d 817, 844-45 (10th Cir. 2013) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); see Coy v. Iowa, 487 U.S. 1012, 1021-22 (1988); United States v. Robinson, 583 F.3d 1265, 1275-76 (10th Cir. 2009); cf. Bullcoming v. New Mexico, 131 S. Ct. 2705, 2719 n.11 (2011)). According to Brecht v. Abrahamson, 507 U.S. 619 (1993), "the Confrontation Clause harmless-error analysis [is] a somewhat different shade." Littlejohn, 704 F.3d at 844-45.  In Brecht, the Supreme Court concluded that "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  Brecht, 507 U.S. at 637 (citing United States v. Lane, 474 U.S. 438, 449 (1986)).  In determining whether error was harmless in the context of a Confrontation Clause violation raised in a habeas petition, the court will "consider factors such as the 'importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case.'" Littlejohn, 704 F.3d at 845 (quoting Van Arsdall, 475 U.S. at 684; citing Jones

8

v. Gibson, 206 F.3d 946, 957 (10th Cir. 2000); Wiggins v. Boyette, 635 F.3d 116, 121-22 (4th Cir. 2011)).

Petitioner complains that the trial court erred in admitting the out-of-court statements by the female informant and that the OCCA's decision violates federal law. (Dkt. # 2 at 33-34). Petitioner states that,

> [t]he evidence presented as testimonial hearsay from the female witness was that: (1) she knew someone named "Nephew" who would, and had in the past, sell her illegal drugs; (2) she called "Nephew" on her cell phone and he agreed to sell her drugs once again; (3) she said "Nephew" would be arriving shortly in a "older blue car;" and (4) she stayed and talked with the three men in the blue car, after Officer Edwards backed away and went back to the motel room.

(Dkt. # 2 at 34-35). However, after a review of the transcripts, the Court finds that the alleged testimonial statements complained of were not made at Petitioner's trial. Rather, the complained of statements were made during a preliminary hearing and at the jury trial of Petitioner's two co-defendants. See Dkt. ## 8, Tr. Prelim. Hr'g at 8-10; 8-4, Tr. Jury Trial at 8.

At Petitioner's non-jury trial, the testimony of the Tulsa Police Officers did not include this detailed, factual information. Three Tulsa Police Officers testified at Petitioner's trial: Officer Wesley Phelps, Officer Jeffrey Edwards, and Officer William Jenkins. First, Officer Phelps did not mention any of the detailed, testimonial statements complained of by Petitioner. The relevant portions of his testimony read as follows:

Q: (by Mr. Evans) And how did this investigation start?

A: (Officer Phelps) I made contact with an informant who told me that they could order up some crack cocaine.

Q:      And did that informant do that?

A:      Yes.

. . .

Q:      . . . What started the investigation?

A:      We got a motel room and the informant from the hotel phoned, dialed a number and ordered some crack.

Q:      Okay.  Do you know if the person she talked to was male or female?

A:      It was a male.  I could hear a male voice.  I was trying to listen to the conversation.

(Dkt. # 8-5, Tr. Non-Jury Trial at 8-10).  Officer Phelps' remaining testimony is limited to his own observations and actions during the investigation.  At no time did Officer Phelps testify as to Petitioner's name, his street name, or the type of car he drove.  He never offered statements by the informant, much less statements made by her to prove the truth of the matter asserted.

Second, the record contains the transcripts of the testimony by Officer Edwards at Petitioner's non-jury trial and his testimony at the jury trial of Petitioner's two co-defendants.  At the jury trial, Officer Edwards testified that "[t]he informant informed us that the male, it was a black male that she knew by the name of Nephew, which is obviously a street name.  And then she had said that he'd being coming in a blue older four-door car."  (Dkt. # 8-4, Tr. Jury Trial at 8).  These statements made by the informant to Officer Edwards would likely satisfy the objectivity test the Tenth Circuit set forth in Smalls.  In other words, given the context, the female informant could "'objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime.'"  Smalls, 605 F.3d at 778 (quoting Summers, 414 F.3d at 1302).  However, five months later at Petitioner's non-jury trial, Officer Edwards limited his testimony to that of his own observations and actions and did not include any of the details he provided at the earlier jury trial of Petitioner's co-defendants.  See, e.g., Dkt. # 8-5, Tr. Non-Jury Trial at 28-42.  At Petitioner's trial, Officer Edwards testified, in relevant part, as follows:

A:      Basically we were inside Room 149 at the Rest Inn and Suites.  The informant had dialed a phone number to the individual that could sell the cocaine.  The informant ordered up $20 worth of crack cocaine.  The male on the other end had said that he wouldn't deliver $20 worth of cocaine, that he wouldn't drive to the motel for that amount, and so the informant ordered $40 and the male said that he was on his way to pick it up.

. . .

Q:      At some point in time did people arrive?

A:      Yes.  After placing the initial order for the cocaine, a blue older four-door vehicle pulled into the parking lot of the Rest Inn and Suites in front of the room.

. . .

A:      . . . the phone inside the room rang and a male told the informant that he was outside.

Q:      Did you go outside to meet the people?

A:      I did.

Id. at 29-30.  Officer Edwards never repeated the testimony he gave at the co-defendants' trial.

Third, Officer Jenkins testified that he only saw the female informant "briefly before the transaction occurred" and did not testify as to any statements made by her.  Id. at 48.

Thus, the transcripts show that, at Petitioner's trial, the officers did not mention Petitioner's actual or street name, his physical description, or a description of his car.  Though statements made by an informant to a police officer are "testimonial" in nature, see United States v. Lopez-Medina, 596 F.3d 716, 730 (10th Cir. 2010), the testimony given by the Tulsa Police Officers at Petitioner's trial did not implicate Petitioner's confrontation rights.  Their testimony did not include testimonial hearsay statements because no statement attributed to the female informant was offered for the truth of the matter asserted.  The testimony of Officer Phelps and Officer Edwards, also did not place any

11

statements made by the informant in front of the judge.[2]  Finally, the testimony provided at Petitioner's trial was devoid of any testimonial statements by the informant identifying any characteristics of Petitioner.  Thus, the police officers' testimony referenced the informant, but merely provided a context for the actions taken by the police and did not implicate Petitioner's right to confront witnesses against him.  See Wilson v. Sirmons, 536 F.3d 1064, 1111 (10th Cir. 2008); United States v. Cromer, 389 F.3d 662, 676 (6th Cir. 2004).

Yet, even if the testimony of the Tulsa Police Officers did fall into the category of "testimonial hearsay," invoking the protections of the Confrontation Clause, the error by the trial court in admitting the statements was harmless.  See Mendez, 514 F.3d at 1043; Littlejohn, 704 F.3d at 844.  The State presented evidence establishing, beyond a reasonable doubt, that Petitioner was guilty of Distribution of a Controlled Substance.  Officer Edwards, based on his observations made as an undercover officer, testified that Petitioner was the individual driving the car that delivered the drugs to the motel.  (Dkt. # 8-5, Tr. Non-Jury Trial at 30).  The two, marked $20 bills used to purchase the cocaine were recovered from Petitioner's pocket when he was arrested immediately following the drug transaction.  Id. at 46-47.  Additionally, the cell phone found in Petitioner's possession at the time of arrest, was identified as the phone dialed by the informant to order the

---

[2]Petitioner's non-jury trial was took place before Tulsa County District Court Judge Tom C. Gillert on July 9, 2009.  Judge Gillert also presided over Petitioner's co-defendants' jury trial, which took place five months earlier on February 9-11, 2009.  (Dkt. # 8-4, Tr. Jury Trial).  Petitioner filed a motion to recuse, citing, among other reasons, the fact that Judge Gillert had heard all of the evidence as to the "alleged wrong doings of defendant . . . [a]s a result of this court having tried the co-defendants [and thus] tainted the impartiality of this court."  (Dkt. # 8-6, O.R. at 54).  The court denied the motion and the OCCA found that Petitioner had "not preserved his claim . . . for appellate review" because he "never filed a writ of mandamus in [the OCCA] asking that the trial court be disqualified."  (Dkt. # 6-3 at 4).  Petitioner did not raise this claim in his habeas petition and thus, the claim is not before the Court.

cocaine and the same used to call the motel to notify her that he had arrived at the motel to deliver the cocaine. Id. at 35-36. Petitioner also made a statement to the informant, in the presence of Officer Edwards, to the effect of "you know, I only deal with you, I don't know this fool." Id. at 31. Thus, the evidence against Petitioner was substantial, even without the statements of the informant.

Therefore, after a review of the record and the transcripts, this Court finds that Petitioner was not denied his rights under the Confrontation Clause. The OCCA's conclusion that the informant's statements were not hearsay was not contrary to federal law. Further, any error in admission of the testimony was harmless in light of the strong evidence supporting Petitioner's conviction. Petitioner is not entitled to habeas relief on Ground I.

### 2.      Failure to conduct a hearing (Ground II)

In his second ground for relief, as identified in his brief in support of the habeas petition (Dkt. # 2), Petitioner argues that the trial judge erred by not conducting a hearing to determine the identity of the female informant. (Dkt. # 2 at 36-38). Petitioner states that "[t]he non jury trial started over [Petitioner's] objections that he could not present a defense, and it would be an improper denial of confrontation." Id. at 37. Thus, argues Petitioner, "the district court failed to hold a meaningful hearing to get to the bottom of the police's negligence and/or willful failure to identify this witness." Id. at 36. The OCCA determined that the district court "did not abuse its discretion in finding that the State complied with the discovery order and proceeding with evidence after the witness could not be identified." (Dkt. # 6-3 at 2). Respondent did not address this ground for relief in his response.

Though Petitioner frames his claim as a "denial of confrontation," Petitioner seeks a "remand for a new trial, with instructions to conduct a hearing to determine who this person is, if she existed

at all, and why, if necessary, the police did not record her name, address and phone number, as they are trained to do." (Dkt. # 2 at 37-38). To the extent Petitioner alleges that the trial court failed to hold a hearing to determine that the informant was in fact "unavailable," the Court finds he is not entitled to habeas relief. "'[A] witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial.'" Ohio v. Roberts, 448 U.S. 56, 74 (1980) (quoting Barber v. Page, 390 U.S. 719, 724-725 (1968)), *overruled on other grounds by* Crawford, 541 U.S. 36. Whether the government has made a good-faith effort is "a question of reasonableness." Cook v. McKune, 323 F.3d 825, 835 (10th Cir. 2003) (internal quotation marks omitted).

In this case, Petitioner has failed to demonstrate that the OCCA's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see Roberts, 448 U.S. at 75-77 (affirming determination that witness was unavailable). The record shows that the trial court conducted at least two hearings on the issue. At a hearing held on June 24, 2009, the trial judge sustained Petitioner's request for the state to identify the informant and to "turn that name over if anybody knows what that name is . . . or if it can reasonably be determined who the identity of that person is . . . ." (Dkt. # 8-3, Tr. Mot. Hr'g at 6). Then, at the beginning of Petitioner's non-jury trial, the trial judge conducted another hearing to review the matter. The trial judge, after an exchange with the parties concerning what information was known and not known about the identity of the informant, concluded that the State had turned over all of the information it had, stating, "I think that's the sum of the information that they have." (Dkt. # 8–5, Tr. Non-Jury Trial at 6). The testimony by the police officers further demonstrated that they, themselves, had no knowledge of

the identity of the informant or how to contact her.  See id. at 9, 29, 45-46.  Thus, the record shows that Petitioner was not denied a hearing to determine the identity of the female informant and that the prosecutorial authorities "made a good-faith effort to obtain" information as to her identity.  The Court concludes that the OCCA's decision was not contrary to, or an unreasonable application of, federal law.  Additionally, Petitioner has failed to demonstrate how the decision by the trial judge was so grossly prejudicial that it fatally infected his trial, in light of the testimony given at Petitioner's trial.  Petitioner is not entitled to relief on this claim.

**C.      Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

*CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States.  His petition for writ of habeas corpus shall be denied.


**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.      The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3.      A certificate of appealability is **denied**.

4.      A separate Judgment shall be entered in this case.


**DATED** this 13th day of February, 2014.

James H. Payne
United States District Judge
Northern District of Oklahoma

16